**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230413-U

Order filed October 2, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| JIAN WANG, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
|     Plaintiff-Appellant, | ) | Du Page County, Illinois. |
| | ) | |
|     v. | ) | |
| | ) | |
| ROBERT GORECKI and BRIAN A. REAL | ) | Appeal No. 3-23-0413 |
| SOTO, | ) | Circuit No. 20-AR-1385 |
| | ) | |
|     Defendants | ) | |
| | ) | |
| (Brian A. Real Soto, | ) | The Honorable |
| | ) | Robert G. Gibson, |
|     Defendant-Appellee). | ) | Judge, presiding. |

_____

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Brennan and Albrecht concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:  The circuit court did not abuse its discretion when it dismissed the plaintiff's negligence complaint with prejudice due to the plaintiff's failure to exercise reasonable diligence in locating and serving the defendant.

¶ 2    The plaintiff, Jian Wang, filed a negligence action against the defendant, Robert Gorecki, and the defendant-appellee, Brian A. Real Soto, alleging personal injury resulting from a

November 2018 traffic accident. The complaint was filed in November 2020 but service was not completed on Soto until April 2023. The circuit court granted Soto's June 2023 motion to dismiss, which alleged that service was not performed in a timely and reasonable manner as required by the Supreme Court Rules. On appeal, Wang argues that the court erred when it granted Soto's motion to dismiss. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On November 8, 2018, a traffic accident occurred in a controlled intersection in Oakbrook Terrace. Wang was in her vehicle and was stopped at a red light. Robert Gorecki was in his vehicle and was stopped immediately behind Wang's vehicle. Soto was driving his vehicle when he rear-ended Gorecki's vehicle, which caused Gorecki's vehicle to rear-end Wang's vehicle.

¶ 5        On November 5, 2020, through her attorney, Wang filed a negligence complaint against Gorecki and Soto, alleging, among other things, that she sustained physical injuries in the traffic accident. Wang's attorney did not immediately attempt to serve the defendants.

¶ 6        On June 21, 2021, the circuit court set a case-management hearing to be held in August to ascertain issuance of service on the defendants. Summonses were issued for Gorecki and Soto on August 3. The case was continued several times and during that delay, Gorecki was served on August 13. Service on Soto was also attempted in August at 508 State Avenue in Saint Charles. However, Soto was not located at that address.

¶ 7        The case against Gorecki progressed, ultimately resulting in a dismissal in February 2022 after a settlement agreement was reached.

¶ 8        On March 8, 2022, Wang's attorney filed a motion that sought service by special order, to correct a potential error in Soto's name, and to issue an alias summons. The motion stated that Wang's insurer had brought a subrogation claim against Soto, who was served at 508 State Avenue

in Saint Charles, and that Soto's insurer paid the claim. The motion did not include any dates as to when these events took place.[1]

¶ 9        The motion further alleged that Wang was an immigrant who was awaiting permanent residency and citizenship status from the federal government and that she was unaware of the nuances of the law in this country. She had discussed the accident with Soto's insurer, who led her to believe that the matter would be settled imminently. As time went on, by chance, Wang met her current attorney just before the statute of limitations was set to run on her claim. He then filed this action on her behalf.

¶ 10        Wang's attorney alleged in the motion that he undertook a diligent inquiry to find Soto and that reasonable efforts to find Soto had been unsuccessful. He used information contained in the police report from the accident, which included the name "Brian A. Real Soto" with an address of 508 State Avenue in Saint Charles. The police report also included Soto's date of birth, telephone number, driver's license number, license plate number, and vehicle identification number.

¶ 11        When service was attempted on Soto at the Saint Charles address in August 2021, the sheriff's department was informed that Soto no longer lived there. No forwarding address was found. Wang's attorney then hired a private investigator, whose search did not locate Soto. Wang's attorney decided to forgo further action regarding Soto, hoping that Soto would somehow show up, while the case against Gorecki proceeded.

---

[1] Documents filed later in the case indicated that (1) service in the subrogation case had been attempted, but not completed, on October 18, 2020, at the Saint Charles address; and (2) the subrogation case was dismissed with prejudice on December 3, 2020, due to a settlement. Regarding the failed service attempt, the documents alleged that the process server looked into the residence and observed exposed wires, fresh paint, and no furniture, indicating that the residence was in a state of renovation. Then, while talking to the downstairs resident, the process server saw a male leave from the back of the residence, so she initiated contact with that male. The male denied being Soto and said that no one lived at the residence because it was being renovated.

¶ 12 In December 2021, Wang's attorney requested the private investigator to undertake another search. While that search again failed to locate Soto, it did reveal that the Social Security Number contained in the police report belonged to a woman in Michigan. Additionally, in late December, the private investigator learned that Soto had apparently moved away from the Saint Charles address approximately one year prior.

¶ 13 The circuit court held a hearing on Wang's motion on March 9, 2022. The court granted the motion, finding that Wang's attorney had undertaken a diligent inquiry into locating Soto and that efforts at locating him were reasonable and unsuccessful. Accordingly, the court ordered Wang's attorney to serve Soto through: (1) the Secretary of State, (2) Soto's insurer, (3) publication in a newspaper, and (4) service at Soto's last known addresses. The court also gave Wang's attorney leave to issue an alias summons. The case was also continued for status until late May.

¶ 14 Wang's attorney obtained alias summonses for Soto at two addresses on May 4. Service by publication was scheduled to run in a newspaper on June 22 and 29 and July 6.

¶ 15 The case was again continued several times, and an attorney from Soto's insurer filed her appearance on his behalf on July 22, 2022. That day, Soto's attorney filed a motion to quash service. The motion acknowledged the circuit court's order of March 9 but noted that alias summonses were not prepared until nearly two months after the court's order. The motion alleged that there was no record of the alias summonses being served and they expired 30 days after their issuance. The motion also alleged that no other attempts at service pursuant to the court's order had been attempted.

¶ 16 In October 2022, the circuit court held a hearing and found that the motion to quash was not ripe. The court stated it would not consider Soto served or entertain a motion for default unless proof of service was filed.

4

¶ 17    Wang's attorney subsequently filed a motion for default in January 2023. The motion indicated that service on the Secretary of State was accepted on December 8, 2022; summons had been mailed to Soto's insurer (albeit no date was provided); publication in a newspaper took place as scheduled; and summonses mailed to Soto at two addresses were returned undeliverable.

¶ 18    During the pendency of the parties' motions, Wang's attorney filed a motion in March 2023 that requested (1) a stay on Soto's motion to quash, (2) withdrawal of Wang's motion for default, without prejudice, and (3) leave to issue alias summonses. The motion alleged that in March 2023, Wang's attorney hired another private investigator who found a "Brian A. Real Soto" in Illinois.

¶ 19    The circuit court held a hearing on March 31 in which it told Wang's attorney that he could not seek an alias summons if prior service had already been effectuated. The court gave Wang's attorney a choice: "[y]ou can either brief this motion to quash and we can have an adjudication whether this individual is subject to the jurisdiction of the court or not or you can agree to quash that purported service and issue alias, not both." After further discussion, Wang's attorney chose to pursue the alias summons. Accordingly, the court granted Soto's motion to quash but also granted leave to issue an alias summons.

¶ 20    Wang's attorney prepared an alias summons on April 12. An affidavit of service was filed with the circuit court on April 20 that indicated service was performed on Soto by a private investigator on April 16 at 200 2nd Street in Saint Charles. The case was continued twice in late May for a return date and for Soto to answer or plead.

¶ 21    In June, Soto's attorney filed a motion to dismiss alleging that he had not been served in a timely and reasonable manner as required by Supreme Court Rule 103(b) (Ill. S. Ct. R. 103(b) (eff. July 1, 2007)). The circuit court held a hearing on the motion to dismiss in August. After hearing

arguments, the court found that the delay that had occurred in this case was unreasonable in part due to the initial summons not being issued until approximately nine months after the complaint was filed. Additionally, the court noted that there were no service returns in the case file and that the decision Wang's attorney made to wait for Soto to appear while the case against Gorecki proceeded was a tactical error and contrary to the purpose of Rule 103(b). Accordingly, the court granted the motion to dismiss the case with prejudice.

¶ 22    Wang appealed.

¶ 23                                II. ANALYSIS

¶ 24    On appeal, Wang argues that the circuit court erred when it granted Soto's motion to dismiss with prejudice. She contends that she exercised reasonable diligence to locate and serve Soto.

¶ 25    Rule 103(b) requires a plaintiff "to exercise reasonable diligence to obtain service on a defendant." Ill. S. Ct. R. 103(b) (eff. July 1, 2007). If the plaintiff fails to obtain service on a defendant after the statute of limitations on the plaintiff's claim has expired, the case can be dismissed with prejudice. *Id*. Whether a plaintiff has exercised reasonable diligence depends on the totality of the circumstances. *Id.*

> "Different factors which a court may consider in determining whether to allow or deny a Rule 103(b) motion include, but are not limited to, (1) the length of time used to obtain service of process; (2) the activities of plaintiff; (3) plaintiff's knowledge of defendant's location; (4) the ease with which defendant's whereabouts could have been ascertained; (5) actual knowledge on the part of the defendant of pendency of the action as a result of ineffective service; (6) special circumstances which would affect plaintiff's efforts; and (7) actual service on defendant." *Segal v. Sacco*, 136 Ill. 2d 282, 288 (1990).

6

Rule 103(b)'s standard is objective, not subjective. *Mular v. Ingram*, 2015 IL App (1st) 142439, ¶ 21. Further, delay in service need not be intentional to justify dismissal under Rule 103(b). *Id.* "Dismissal of a cause of action with prejudice under Rule 103(b) is a harsh penalty which is justified when the delay in service of process is of a length which denies a defendant a 'fair opportunity to investigate the circumstances upon which liability against [the defendant] is predicated while the facts are accessible.' " *Segal*, 136 Ill. 2d at 288. We review a circuit court's decision to grant a Rule 103(b) dismissal for an abuse of discretion. *Id.* at 286.

¶ 26    We now turn to the Rule 103(b) factors as they apply to this case. First, regarding the length of time used to obtain service of process, we note that Wang filed her action on November 5, 2020, just days before the two-year statute of limitations was set to expire. Then, she did not obtain any summonses until August 2021—a delay of nine months. Illinois courts have held that even shorter delays have constituted a *prima facie* showing of a lack of diligence. See, *e.g.*, *Ollins v. Karl*, 2022 IL App (1st) 220150, ¶ 36. Further, service was not completed at that time. In fact, service was not completed until April 2023.

¶ 27    Second, we consider the activities of the plaintiff. After the initial failure to serve Soto in August 2021, Wang's attorney hired a private investigator to locate Soto. The private investigator was unable to find Soto. Then, Wang's attorney deliberately chose to stop pursuing service on Soto while he advanced the case against Gorecki. Four months later, in December, Wang's attorney had the private investigator perform another search. That search was unsuccessful, although it did reveal that the Social Security Number for Soto contained in the police report did not belong to him and that he had moved from the address listed in the police report approximately one year prior. Another four months passed before Wang's attorney decided to seek service by special order in March 2022.

7

¶ 28    Following the court's decision to grant the motion for service by special order in March 2022, further delays ensued. While it appears, at a minimum, that service by publication was completed by early July and service upon the secretary of state was completed in early December, Wang's attorney ultimately decided to "abandon" those attempts at service. He sought to withdraw his motion for default in early 2023, which claimed service had been completed, because Soto was finally located in Saint Charles. When given the choice by the circuit court, Wang's attorney chose to quash service in favor of issuing a new alias summons. Thus, it was not until April 2023 when Soto was finally served.

¶ 29    We reiterate here that Rule 103(b)'s standard is objective. *Mular*, 2015 IL App (1st) 142439, ¶ 21. The decision to wait to attempt to serve Soto, for the first time, nine months after the complaint had been filed was objectively unreasonable. Further, even considering the circuit court's excusal of the delays between November 2020 and March 2022, the additional delay of one year before service was in fact completed was objectively unreasonable.

¶ 30    Third, we consider the knowledge of Soto's location by Wang. The record confirms that Wang's attorney could not find Soto. Initial service in August 2021 was unsuccessful, as Soto was no longer living at that address. No forwarding address was found. Searches conducted on separate occasions by private investigators were unsuccessful until March 2023.

¶ 31    Fourth, we consider the ease with which Soto's location could have been ascertained. It must be remembered that the complaint was filed in this case on November 5, 2020. However, Wang's attorney did not attempt to serve Soto until August 2021. Later efforts at locating Soto revealed that he had allegedly moved out of the residence at 508 State Avenue in Saint Charles sometime around December 2020. We further note that in October 2020, the Saint Charles residence may have been in an unlivable state of renovation. Thus, it is unclear whether Wang's

8

attorney could have completed service during those initial nine months, and he was undeniably difficult to locate after that time.

¶ 32        Fifth, we consider the actual knowledge Soto had of the pendency of Wang's action. The record contains nothing to indicate that Soto was aware of Wang's action. While Soto was represented by an attorney from his insurance company, that attorney did not even know Soto's location.

¶ 33        Sixth, we assess whether special circumstances existed that affected the efforts by Wang's attorney to serve Soto. In support of her argument on this factor, Wang highlights, among other things, that Soto moved without leaving a forwarding address, sold his vehicle and cancelled his license plates, and cancelled his phone. Wang also emphasizes that the Social Security Number from the police report did not belong to Soto, that he never filed an affidavit after he was served to show that he could have been located, and that his attorney never raised a Rule 103(b) issue until June 2023 after he had been served. We find none of these circumstances to be compelling. We note that the difficulty in locating Soto was at least exacerbated by the dilatory procedure used by Wang's attorney. There was no explanation given as to why service could not have been attempted earlier than the initial attempt, which was not made until nine months after the complaint had been filed. *Prima facie* cases finding a lack of diligence in shorter delays have been found. See, *e.g.*, *Paglis v. Black*, 178 Ill. App. 3d 1062, 1064 (1989) (involving a delay of 5½ months); *Kramer v. Ruiz*, 2021 IL App (5th) 200026, ¶ 25 (involving a delay of eight months).

¶ 34        Courts must weigh the Rule 103(b) factors in light of Rule 103(b)'s purpose. *Segal*, 136 Ill. 2d at 288. "The purpose of Rule 103(b) is to protect defendants from unnecessary delay in the service of process on them and to prevent the circumvention of the statute of limitations." *Id.* at 287. What complicates the analysis in this case is that when the circuit court held a hearing on the

9

motion for service by special order in March 2022, it considered the prior activities of Wang's attorney and found them to be reasonable and indicative of diligence. The propriety of that ruling is not before this court and it cannot be ignored, as it not only excused any lack of diligence between the filing of the complaint and the motion for service by special order, but also impacted the additional activities of Wang's attorney. Although dilatory, those additional activities were undertaken. Then, despite what may have been effective service pursuant to those activities, the circuit court again allowed Wang's attorney to abandon that service in favor of obtaining an alias summons to serve on Soto in April 2023. In other words, the circuit court in effect excused the mishandling of service by Wang's attorney. The court's actions are not insignificant.

¶ 35    We additionally note that prejudice to the defendant is another factor that may be considered by courts when determining whether a Rule 103(b) dismissal is proper. *Womick v. Jackson County Nursing Home*, 137 Ill. 2d 371, 377 (1990). Here, Soto caused the accident and was sued by Wang's insurer in a subrogation action. His insurance company did not contest the claim and, in fact, paid it. There are no complexities apparent from the circumstances of the accident, nor is there any apparent prejudice to Soto by the delay in service in Wang's action.

¶ 36    We consider all the aforementioned factors in light of Rule 103(b)'s purpose and in light of the standard of review. "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41. This case presents a unique set of circumstances, including the mishandling of service, the lengthy delay in serving Soto, a deliberate decision to forgo continuing to pursue service while the case against a separate defendant proceeded, and the circuit court's excusal of what constituted a *prima facie* case of a lack of diligence. Under abuse-of-discretion review, it is not the function of the reviewing court to

10

substitute its judgment for that of the circuit court. *Maggi v. RAS Development, Inc.*, 2011 IL App (1st) 091955, ¶ 61. Whether this court would have arrived at a different conclusion than that of the circuit court is irrelevant; the question of whether Rule 103(b) dismissal was appropriate in this case is a close one that reasonably could have resulted in opposite conclusions. Under these circumstances, we cannot say that no reasonable person would take the view adopted by the circuit court. Accordingly, we hold that the circuit court did not abuse its discretion when it granted Soto's Rule 103(b) motion to dismiss with prejudice.

¶ 37                                    III. CONCLUSION

¶ 38          The judgment of the circuit court of Du Page County is affirmed.

¶ 39          Affirmed.